**EGGERS & HIGGINS AND EDWIN A. KEEBLE ASSOCIATES, INC.**
(a joint venture)

v.

**The UNITED STATES.**

No. 290–66.

United States Court of Claims.

Nov. 15, 1968.

James T. Lewis, Washington, D.C., attorney of record for plaintiff, Hudson & Creyke, Washington, D. C., and Lewis, Mitchell & Bixler, McLean, Va., of counsel.

Michael J. Rubin, with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant, Thomas J. Lydon, Washington, D.C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

### PER CURIAM:

This case was referred to trial Commissioner Roald A. Hogenson, with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on February 29, 1968, wherein such facts as are necessary to the opinion are set forth. Exceptions to the commissioner's opinion, findings and recommended conclusion of law were filed by plaintiff and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. The commissioner's views and recommendation are fully consistent with the principles announced in Crown Coat Front Co. v. United, States, 386 U.S. 503, 518–519, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967); Nager Electric Co. v. United States, 368 F.2d 847, 864, 177 Ct.Cl. 234, 259–260 (1966), and Schlesinger v. United States, 383 F.2d 1004, 1008, 181 Ct.Cl. 21, 28–29 (1967). Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, it is concluded that plaintiff's assignment of errors of the Veterans Administration Contract Appeals Board should not be sustained; that the Board's findings of fact are supported by substantial evidence; that the Board's decision was not fradulent, capricious, arbitrary, or so grossly erroneous as necessarily to imply bad faith, but correct as a matter of law; that the ruling of the Board should be sustained that plaintiff failed timely to present to defendant's contracting officer its claim under the Changes in Service article of its contract with defendant; and plaintiff's petition is dismissed.

## OPINION OF COMMISSIONER

### HOGENSON, Commissioner:

Plaintiff seeks a ruling by this court that it timely presented its claim under the Changes in Service article of its contract to defendant's contracting officer and that it is entitled to an administrative hearing on the merits pursuant to the Disputes article. Obviously, if plaintiff did not timely present its claim, the petition will have to be dismissed. If the court sustains plaintiff's position, proceedings will have to be suspended to permit plaintiff an opportunity to present its claim on the merits within the administrative agency involved, as provided by the Disputes article. United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966). For the reasons hereinafter stated, it is my opinion that plaintiff's petition should be dismissed.

Plaintiff is a joint venture comprised of two architectural firms, Eggers, and Higgins of New York, N.Y., and Edwin A. Keeble Associates, Inc., of Nashville, Tennessee. On April 22, 1959, plaintiff entered into a contract (V1006C–386) with the Veterans Administration for the lump sum fee of $445,000 to provide architect-engineer services for a new VA 500-bed General Medical and Surgical Hospital and Regional Medical clinics to be constructed at Nashville, Tennessee,

at an estimated cost of $10,400,000. On the same day, defendant issued notice to proceed to plaintiff. In addition to subsequent drafting and related services to be performed after bidding and award of a construction contract, plaintiff undertook to provide certain special studies and to design the hospital and provide the drawings and specifications within 12 months of notice to proceed, and plaintiff timely complied on April 22, 1960. The construction contract was awarded on June 27, 1960, and plaintiff's work under its contract ended when construction was completed in January 1963.

On July 16, 1959, defendant's contracting officer telephoned plaintiff at Nashville, Tennessee, and advised that the Administrator of VA had received a disturbing letter from the Vice Chancellor of Vanderbilt University, which letter was read over the telephone. The letter concerned relocation of the proposed hospital, and a discussion was had concerning the proposed new site in relation to the planned site owned by defendant. The possibility of an exchange of land was discussed. The contracting officer stated that a meeting would have to be held, and suggested that before such meeting, plaintiff confer with the interested parties, and the names of various persons were provided to plaintiff. Plaintiff was instructed to ascertain the areas of agreement and disagreement, and that a meeting would be set sometime after August 3, and that plaintiff's representatives should come well prepared to avoid the necessity of a second meeting. The contracting officer commented that plaintiff knew that the project was on a tight schedule, and there couldn't be too much delay.

On September 2, 1959, defendant's contracting officer telephoned plaintiff and advised that the VA had made the decision to build on the original site, and that letters to that effect had been delivered to the Vice Chancellor or Vanderbilt University and to the Mayor of Nashville. Plaintiff's representative responded that plaintiff "will go ahead now," and requested comments from defendant on the five sections of Special Studies forwarded the previous day. By letter dated September 4, 1959, plaintiff acknowledged the telephone advice that the original building site would be used.

By letter dated September 21, 1959, to defendant's contracting officer, plaintiff requested an extension of contract performance time as follows:

Our contract for architectural and engineering services on the above named project sets definite dates for successive stages of completion of the working documents.

As you know, our progress toward these objectives was held up while the Administration was considering a new building site, in the investigation of which we took an active part. Because of the uncertain effect of the possible site change on the building plans, our activity on the working drawings was necessarily at a standstill during that period.

This delay began with the July 16th telephone instructions from Mr. Mork to undertake an investigation of the new site and ends on September 1st when we were notified that the original site would be retained.

For this reason, and because of the time required for further study of the Administration's request for revision of the boiler room and other mechanical areas, we respectfully request a deferment of two months in the various completion dates given in our contract. We assure you, however, that we shall do everything possible to beat the requested new dates.

By letter, dated October 5, 1959, to plaintiff, defendent's contracting officer replied as follows:

Your letter of September 21, 1959, requesting a two months extension in time of the various completion dates given in your contract, has been reviewed.

Confirming the telephone conversation between Mr. Holderness, Mr. Norton and Mr. Robinson of this office, it is

necessary that the scheduled date of April 22, 1960, for the issue of the drawings and specifications be held. Also, to meet this date, it is imperative that the 75% review date of February 1, 1960 be held as close as possible. We would appreciate your confirmation of these dates.

This decision is necessary in order that this project may be issued and awarded during the current fiscal year.

Mr. Holderness was the project manager for plaintiff joint venture.

By letter dated October 7, 1959, to defendent's contracting officer, plaintiff stated in part as follows:

We have received your letter of October 5 in which you informed us that (a) the April 22, 1960 date for issuance of the drawings and specifications on the Nashville project must be held and (b) the 75% review date of February 1, 1960 must be held as close as possible. We agree to be governed accordingly.

More than 5 years later, plaintiff submitted to the original contracting officer by letter dated February 18, 1965, its request for a modification of the contract pursuant to article 21 (Changes in Service) for an additional fee of $51,057.35, representing increased costs allegedly caused to plaintiff by acceleration of the work. Plaintiff claimed that such acceleration was caused by defendant's October 5, 1959, direction to plaintiff to complete and issue the drawings and specifications by the date specified in the contract, in spite of the claimed suspension of work for 6 weeks for investigation of building site change, and the alleged further delay of 2 weeks on account of defendant's requested revision of the boiler room and other mechanical areas. Since the services involved in this claim were completed on April 22, 1960, as required by the contract, it is obvious that all of the claimed acceleration occurred prior to that date, and after denial on October 5, 1959, of the requested extension of time.

The original contracting officer acknowledged receipt on March 1, 1965, of this 1965 claim by his letter to plaintiff, dated March 5, 1965.

Thirteen modifications to the contract relating to changes in services, but not concerning nor mentioning any acceleration of work, were negotiated by the parties, which modifications were executed and issued by the contracting officer to plaintiff in the period from January 10, 1961, to March 15, 1965. Thus it is apparent that the administration of the contract remained open through March 1, 1965, the date of receipt by the contracting officer of the acceleration claim, the last claim presented. Modification No. 1, issued January 10, 1961, included among other items an allowance of an increase of $1,399.64 in the contract price for time spent and travel expense incurred by various employees of plaintiff in the investigation and consideration of the proposed building site change.

By letter dated June 25, 1965, the successor contracting officer replied to plaintiff's 1965 claim letter relating to acceleration of work, stated that article 21 of the contract provided that any claim for adjustment under such article had to be made in writing within 10 days from the date the change was ordered or within such longer period as may be allowed by the contracting officer, and held that such requirement was not met by plaintiff. The successor contracting officer further commented that plaintiff's claim was first filed some 5½ years after occurrence of the events upon which the claim was predicated. He stated that he had not considered such claim on the merits. Plaintiff was advised that the decision was final unless appealed pursuant to the Disputes article to the head of the department.

Plaintiff duly filed its notice of appeal, dated July 9, 1965, from such decision, and the Veterans Administration Contract Appeals Board promptly advised plaintiff that such appeal had been docketed as VACAB–537, and that pursuant to Board rules, the contracting of-

ficer had been requested to furnish findings of fact, copy of which would be supplied to plaintiff for further proceedings.

Pursuant to the request of the Board, the successor contracting officer submitted his Findings of Fact, dated July 23, 1965, which summarized the contents (and attached a copy) of plaintiff's acceleration claim letter. The findings then briefly delineated various communications which had occurred by letter and by telephone between the original contracting officer and plaintiff relevant to that claim, i.e., the telephone conversations of July 16 and September 2, 1959; plaintiff's letter of September 4, 1959 acknowledging the telephone advice that the original building site was retained; the original contracting officer's letter of acknowledgment (March 5, 1965) of plaintiff's acceleration claim; and the successor contracting officer's subsequent decision letter on that claim. Documentary evidence of such communications was attached. These communications are described above in detail in this opinion. The findings of the successor contracting officer, however, made no mention of, and no copies were attached, of the above-quoted 1959 letters of September 21, October 5 and October 7, pertaining to plaintiff's request for and the contracting officer's action on an extension of time for contract performance on account of the building site problem and the revision of the boiler room and other mechanical areas. The findings summarized the contents of the decision letter of the successor contracting officer, copy of which letter was one of the attached documents. No findings or decision were made on the merits of plaintiff's acceleration claim. While there was an expiration of about 4 months between submission by plaintiff of such claim to the original contracting officer and the issuance of the decision letter on such claim by the successor contracting officer, no acceptable inference arises that such claim was considered on the merits on the level of the contracting officer, as plaintiff contends.

On September 24, 1965, plaintiff timely filed with the Board its petition in support of its appeal from the contracting officer's findings of fact and decision dated July 23, 1965. After alleging the facts concerning the 6-week delay due to investigation of the proposed building site change and the 2-week delay due to certain changes, the petition recited that the contracting officer's decision was erroneous because (a) no consideration was given to plaintiff's September 21, 1959, request for extension of time, and to the contracting officer's October 5, 1959, denial of such request; (b) the decision was inequitable and not consistent with the contract language and applicable precedent set in cases by VACAB and other boards; (c) the contracting officer took 4 months to decide the claim, and his statement is in error that he did not consider such claim on the merits; and (d) the contracting officer's statement that the claim was first filed 5½ years after the events involved is misleading in that the government knew about the claim prior to the time when the claimed costs were incurred. Plaintiff requested the Board to rule that the claim should not be denied for untimeliness and remand such claim to the contracting officer for consideration on the merits.

On October 11, 1965, defendant filed with the Board its motion to dismiss and answer. The motion stated that the appeal was predicated upon the contracting officer's decision of October 5, 1959, denying the request for time extension; that no appeal was taken from such decision; that the present monetary claim arose out of the identical alleged circumstances as the original claim; and that the current claim and appeal were efforts to revive a matter over which the Board had no authority to assume jurisdiction by reason of the fact that no timely appeal was taken to the decision of October 5, 1959. By way of answer, defendant set forth various admissions, denials and allegations of fact, and further alleged that plaintiff did not file a claim for monetary relief within 10 days

(allowed by the contract) from the date it claims a change in the contract was ordered; that the contracting officer has not, expressly or impliedly, allowed a longer period of time to file any such claim; and that to permit consideration of plaintiff's belatedly-filed claim would make a shambles of contract provisions which prescribe time limits within which such a claim must be filed. The answer did not expressly mention "laches" or that defendant had been "prejudiced" by late filing of the claim.

On December 16, 1965, the Board held a hearing limited to defendant's motion to dismiss. Defendant offered and the Board received and filed an amended answer which added the allegation that the government

> * * * was seriously and irreparably prejudiced by the fact that Appellant first filed the within claim more than five (5) years after occurrence of the facts out of which Appellant alleges this claim to have arisen; further, that the relative positions of the parties changed between 1959 and 1965; that Appellant has received all consideration it was reasonably entitled to receive under Sections 20 [Disputes] and 21 [Changes in Service] of its contract; and, by reason of the belated filing of this claim, the Government has been deprived of its right and duty to evaluate its position, in the light of a monetary claim, at a time and under conditions when an adjustment, as contemplated by Section 21 of said contract, could have been made.
>
> *   *   *   *   *   *

While plaintiff's attorney stated that he was "inclined to object" to the amendment to the answer, he in fact did not state any objection.

Besides the documentary proof in the administrative record, the Board heard and considered the testimony of Mr. Lee D. Mork, defendant's original contracting officer for the subject contract, and also that of Mr. George S. Holderness, who was a partner of co-venturer Eg-

gers and Higgins and who was the project manager and general supervisor for plaintiff on the contract performance.

According to Mr. Mork, the April 22, 1960, contract completion date for the drawings and specifications was selected so that the construction contract could be awarded and funds obligated for that purpose that fiscal year. The appropriated funds for construction would not have expired that fiscal year. The administrative reason for trying to obligate construction funds during a particular fiscal year is to avoid the objection in future appropriation procedures that substantial funds previously appropriated remained unspent or unobligated. It was not unusual, however, for the VA to delay the scheduled obligation of funds for a new hospital project from one fiscal year to another.

Mr. Mork first heard about a claim by plaintiff for acceleration of work (completion of drawings and specifications) in a telephone conversation with Mr. Keeble (partner in one firm of the plaintiff joint venture) in late January or early February of 1965, when Mr. Keeble stated that plaintiff was considering the filing of such a claim. Plaintiff's claim letter of February 18, 1965, was the only written notice he saw of such a claim.

Both of the architectural firms in plaintiff joint venture were large organizations, and the subject contract was a relatively small part of their overall work. This was known to Mr. Mork, and contributed to the surprise he experienced when he learned of the acceleration claim in early 1965. The VA had about 200 contacts with various members of plaintiff joint venture between October 1959 and February 1965. Plaintiff had another A–E contract with the VA for the new Washington, D.C., hospital, which ran simultaneously with the subject contract. Mr. Mork was not made aware that plaintiff's staff was working overtime to meet the subject contract completion date, nor was he ad-

vised that plaintiff was experiencing any manpower problems.

Mr. Mork testified that if he had been apprised in the early stages of the contract that an acceleration claim would be filed, he might have taken a different course on extension of the contract completion time; and that since the construction funds would not have lapsed if not obligated at the end of the fiscal year, he would have considered delaying the bidding procedures on the construction contract. Had the 60-day extension of time been allowed, there would have been insufficient time to award the construction contract during that fiscal year, because 8 weeks would have been required for the bidding procedures and at least 2 additional weeks for evaluation of bids, awarding of the construction contract and obligation of the funds.

Mr. Mork stated that the government could not evaluate plaintiff's claim in 1965, as adequately as in the latter part of 1959 or 1960, and gave as his reason that defendant could do nothing about the claim in 1965, whereas in 1959 it would have been possible to take other action which would have made it unnecessary to meet the original target date and also that from an administrative standpoint, it is desirable to negotiate change orders for extra fees in advance of the work to be performed, to avoid disputes and disagreements. Mr. Mork conceded that if adequate records were still available, the government could presently make the same evaluation of the acceleration claim as could have been made in 1960.

When asked what he thought plaintiff would have to do when the request for extension of time was denied and when the direction was given to plaintiff to complete by the date specified in the contract, Mr. Mork replied that he didn't think at the time that there had been a substantial delay because the contract required plaintiff to provide special studies which had to be completed before the design of the hospital could com-mence, but which were not then completed. The design was to be based on the special studies. He realized that plaintiff had a fairly tight schedule, but didn't treat plaintiff's request for extension of time as involving acceleration of work because of the unfinished work on the special studies. Nine months were sufficient time to design a hospital such as the subject one, and 12 months were allowed because of the special studies required by the contract. These special studies had the purpose of endeavoring to bring up to date for employment in present and future VA hospital designs, more efficient and more economical systems, i.e., structural, heating, air conditioning, electrical, communications, and others. Such studies were not affected by the proposed change in building site because they were applicable to any hospital anywhere, except that variations would exist for different climates.

Mr. Holderness, plaintiff's project manager, was the author of plaintiff's above-quoted request for extension of time, dated September 21, 1959. He thought at the time that VA would understand that the 2-month delay would require resort to "unusual methods" to meet the contract completion date, and he "assumed" that in due time the parties would discuss the financial aspects. He therefore limited such letter to a request for the actual additional time needed, and gave no notice to defendant that additional money would be expected.

Most of the drafting work was performed by plaintiff in Nashville, Tennessee, with the rest done in New York, N.Y. Apparently, the contracting officer and his staff were stationed in Washington, D.C.

Mr. Holderness stated that he considered as final the denial of the requested extension of time, and that the only remedy available to plaintiff was to increase its staff and work overtime. He further stated that in agreeing in his October 7, 1959, letter to be governed by denial of the time extension request, plaintiff did not intend to waive reimbursement of increased costs.

The claimed acceleration costs were expended over the whole period between early September 1959 and April 22, 1960, and plaintiff knew that it was incurring such costs. Mr. Holderness' explanation for the delay until February 1965 in the filing of the acceleration claim was that plaintiff's representatives thought it advisable to wait until other pending matters were resolved. He stated that no written acceleration claim had been presented other than that one. He had no personal knowledge of the claim having been discussed with any representative of defendant prior to submission of the February 18, 1965, claim.

After the day of the hearing, defendant's attorney by letter requested the Board to have the reporter eliminate from the transcript a statement and response of the attorneys concerning their meeting in May 1964 (which obviously was done), and in lieu thereof, defendant's attorney submitted a "stipulation" signed only by him, which stated that plaintiff's attorney met with him on May 12, 1964, and discussed many items involved in plaintiff's contracts on the Nashville, Tennessee, and Washington, D.C., hospital projects, and that on that occasion plaintiff's attorney "mentioned that a claim, based on 'Acceleration of Work,' was being considered by his clients." Thereafter, plaintiff's attorney advised the Board by letter that the claim mentioned in the "stipulation" was the same as the one involved in the Board proceedings, as was made clear in the meeting. By subsequent letter to the Board, defendant's attorney in effect agreed to such an amendment of his "stipulation."

Pursuant to leave granted by the Board at the hearing, plaintiff thereafter filed an affidavit of Mr. S. Igor Jacusko of Eggers and Higgins, in which Mr. Jacusko stated that he was present at a meeting on November 9, 1959, in Washington, D.C., when Mr. Keeble of the joint venture informed Messrs. G. E. Distelhurst and J. B. Robinson of the VA that the joint venture "would claim

an increased fee to cover the additional cost of accelerated production necessitated by the V.A.'s refusal to grant the Joint Venture an extension of time following the delay caused by the V.A.'s consideration of a new site." He further stated that he had discussed the probability that such an acceleration claim would be made with Messrs. Distelhurst and Robinson on April 8, 1960, and on several occasions in the years 1961 through 1964 with Mr. Distelhurst and Mr. A. L. Skinner of VA.

Thereafter, defendant filed three affidavits in response, one each of Messrs. G. E. Distelhurst, J. B. Robinson and A. L. Skinner, defendant's representatives mentioned in the Jacusko affidavit. These respective affidavits were to the effect that each affiant had no recollection of any discussion with Mr. Keeble or with Mr. Jacusko, or any statement made by either of them, with respect to additional costs to be claimed by plaintiff for acceleration of work; that each affiant as a matter of course had customarily made notes, memoranda and other records of visits and contacts with representatives of architect-engineer firms with whom the VA was doing business; that a careful review of such records revealed no note or record of any such statements made by Mr. Keeble or by Mr. Jacusko; that a note of such a statement would have been made; and that to the best knowledge and recollection of each affiant, no such statement was made.

In addition to a standard Disputes article (Section 20) and also a Suspension of Work article providing only for extension of time for contract completion on account of suspension of work by the government, the subject contract contained a Changes article, reading as follows:

21. *Changes in Service*

The Contracting Officer may at any time, by a written order, make any changes in the services to be performed hereunder. The A/E shall comply with such order and promptly

and diligently perform the services so changed. If such changes cause an increase or decrease in the cost of performing the services under this contract, or in the time required for its performance, an adjustment shall be made in the time and fee, and the contract shall be modified accordingly by appropriate change order or supplemental agreement. The additional fee shall be determined by using the same percent as that represented by the lump sum fee. This percent shall be applied to the increase or decrease in agreed estimated construction cost resulting from the change; however, no increase in fee will be paid when an increase or decrease in the agreed estimated construction cost requires little or no additional work and services on the part of the A/E. When the resulting change in agreed estimated construction cost is not a true indication of the amount of additional work and services required of the A/E, the increase in fee will be based on the A/E's actual cost in manhours and materials plus reasonable overhead. *Any claim for adjustment under this Section must be made in writing within 10 days from the date the change is ordered or within such longer period as may be allowed by the Contracting Officer.* If the parties fail to agree upon the adjustment to be made, the dispute shall be determined as provided in Section 20 but nothing provided in this Section shall excuse the A/E from proceeding with the prosecution of the work so changed. [Emphasis added]

Section 20 (Disputes) contained the usual provision *inter alia* that pending final decision of a dispute, the contractor shall proceed diligently with the performance of the contract and in accordance with the contracting officer's decision.

Following the submission of briefs by both parties the VACAB on April 20, 1966, issued its written decision, 66–1 BCA ¶ 5525. It found that the contracting officer did not consider plaintiff's claim on the merits; that the contracting officer did not know or have good reason to anticipate that plaintiff would be compelled to accelerate its work for any reason chargeable to the government; that the weight of the evidence supports the government's contention that no representative of defendant had actual knowledge of plaintiff's intention to file a claim until May 1964, when the attorneys for the parties discussed the matter; and that the government was prejudiced by plaintiff's long and unreasonable delay in furnishing notice of its claim. In reaching these ultimate findings of fact, the Board considered at length the detailed testimony and evidence presented in its proceedings. The Board concluded its decision as follows:

Appellant's only explanation for its long delay in presenting this claim is that it is customary to settle the easy ones first. This may be a valid reason for postponing negotiations but it does not excuse failure to furnish reasonable notice to the other party of a claim to come.

In our opinion, the circumstances of this case compel the conclusion that the Government has been substantially prejudiced by Appellant's long and unreasonable delay in furnishing notice of this claim. Todd v. U. S. [292 F.2d 841], 155 Ct.Cl. 87; Maxan Dress Corp. v. U. S. [115 F.Supp. 439], 126 Ct.Cl. 434. These are the ingredients of the equitable doctrine of laches, which stands as a bar to further consideration of stale demands. As stated in the *Maxan* case:

"The impact of laches is much broader than the mere passage of time and delay as such. Implicit in the concept is the idea of prejudice to the opposing party by the surprising assertions of duties owed or rights violated at a time when the elements of proof are obscured by the passage of months or years, or subsequent to some prejudicial change of position by the party sued."

We therefore hold that Appellant is not entitled to consideration of its

claim on the merits. The appeal is denied.

Upon consideration of plaintiff's motion for reconsideration and supporting brief and defendant's opposition thereto, the Board on June 30, 1966, issued its decision on motion for reconsideration, 66–1 BCA ¶ 5673. The Board reviewed in detail the testimony and evidence relating to its ultimate findings of fact, and adhered to and reaffirmed its decision of April 20, 1966.

■ The above-stated ultimate findings of fact of the Board are supported by substantial evidence, as demonstrated by the foregoing summary of the testimony and evidence contained in its record of proceedings, considered in the light of the standards for judicial review. Dittmore-Freithmuth Corp. v. United States, 390 F.2d 664, 683, 182 Ct. Cl. 507, 537 (1968). It is clear that the contracting officer did not consider plaintiff's acceleration claim on the merits, and therefore there was no waiver by defendant of the defense of lack of timely notice or protest. 390 F.2d at 668, 182 Ct.Cl. at 511. With respect to the Board's findings of prejudice to defendant and lack of knowledge of the contracting officer, such determinations are supported by the inherently reasonable testimony of the contracting officer. The assessment of his credibility was peculiarly within the province of the Board, especially in the absence of contradictory, incontrovertible facts. Williamsburg Drapery Co. v. United States, 369 F.2d 729, 733, 177 Ct.Cl. 776, 783 (1966). He did not know, and in fact had sufficient reason to believe and did believe to the contrary, that acceleration of work and increased costs would result from his denial of the requested extension of time. He could have deferred the target date for awarding of the construction contract, and taken action necessary to avoid the claimed costs for acceleration of work. Furthermore, the Board was not required to accept the statement of plaintiff's project manager (who handled the correspondence on the request for extension of time), that he *assumed* that the contracting officer would know that acceleration would be necessary, and therefore neglected to advise that acceleration costs would occur. Even if the Board accepted such as the true state of mind of plaintiff's project manager, the validity of the finding of prejudice is not overcome. The accepted fact remains that the contracting officer under the circumstances could not have reasonably known that acceleration would be necessary, and the very purpose of the required notice is to reveal to the contracting officer information which will alert him to the need to take action in the best interests of his agency.

■ The only evidence before the Board involving substantial conflict is that involved in the battle of affidavits which ensued after the hearing of testimony of live witnesses. The weight to be given to the affidavits of persons who did not appear before the Board was also within the peculiar province of that body, especially in the absence of any showing of arbitrariness or caprice in the choice of the Board to accept the affidavits of defendant's representatives rather than that of plaintiff's affiant. There are no incontrovertible facts which would require the Board to accept the assertions of plaintiff's affiant that defendant's representatives (persons other than the contracting officer) were repeatedly told over a period of 5 years that plaintiff intended to file an acceleration claim. The inability of any of the three representatives of defendant to recall any of the allegedly oft-repeated oral notices of an unusual claim to be made would have to be rejected by the Board as an appalling and commonly-held loss of memory if not an outright withholding of truth. The above-stated contents of defendant's affidavits considered in the light of all of the relevant and material facts and circumstances are substantial evidence supporting the Board's determination of this issue of fact.

In addition to its attack upon the Board's ultimate findings of fact, plaintiff assigns as error various conclusions of law of the Board. Of course, it is axiomatic that under the Wunderlich Act, 68 Stat. 81, this court accords no finality to rulings of law by the Board and makes its own independent judgment thereon.

Plaintiff assigns as an error of law committed by the Board that the mere passage of time is a bar, in and of itself, to consideration of a claim in the absence of any proof of prejudice. That the Board did not so hold is evidenced by the above-quoted language of the Board's decision, placing ultimate reliance on prejudice to defendant, in holding that plaintiff did not give timely notice and that plaintiff was not entitled to a hearing on the merits. Obviously, in making this contention plaintiff is assuming that its position would be sustained that no finding of prejudice can be made, and then asks this court to apply a rule that mere passage of time does not render a claim untimely. But there was more than mere passage of time in this case.

Plaintiff further assigns as an error of law committed by the Board that the defense of laches can be raised by an administrative board on its own initiative where there has been no allegation, proof, or mention of laches by the government in defense of the claim. It is true that the word "laches" was not mentioned in defendant's answer or amendment thereto, or in its briefs submitted to the Board prior to the motion for reconsideration. However, the defense of prejudice to defendant was clearly raised in the amendment to the answer, in the contracting officer's testimony presented without objection, and in defendant's briefs to the Board. Careful reading of the Board's entire decision reveals that the Board was basically concerned with whether sufficient prejudice was shown to preclude a hearing on the merits because of untimeliness of plaintiff's claim, and if its ruling was correct in this respect, it makes no difference that the Board made reference to the doctrine of laches.

In its motion to the Board for reconsideration, plaintiff complained *inter alia* that the Board had decided the case on a theory not advanced by defendant, i.e., that "laches" barred the claim. Defendant's response was that the Board was at liberty to decide the case on any applicable theory, irrespective of whether such had been advanced by either party. The Board's decision on the motion did not mention "laches" but dwelt at length on prejudice to defendant as justifying dismissal of the appeal for late furnishing of notice of claim.

In Kaiser Aluminum & Chemical Corp. v. United States, 388 F.2d 317, 319, 181 Ct.Cl. 902, 906 (1967), this court declined to extend the doctrine of laches to contract actions, sustaining by implication, however, a previous holding in B–W Constr. Co. v. United States, 100 Ct.Cl. 227, 236 (1943), that long unexplained delay in bringing suit in that instance cast upon that plaintiff a somewhat heavier burden in proving its case than usual.

The above-quoted Changes in Service article, upon which plaintiff bases its acceleration claim, states:

\* \* \* Any claim for adjustment under this Section must be made in writing within 10 days from the date the change is ordered or within such longer period as may be allowed by the Contracting Officer. \* \* \*

Thus, the contracting officer was by agreement of the parties vested with the exercise of discretion, albeit reviewable by the Board under the Disputes article, to decide whether a claim was to be considered if presented more than 10 days from the date the change was ordered, in this case the date being October 5, 1959, the date of denial of the requested extension of time. Vested with such discretionary authority, the contracting officer must exercise his own judgment on the matter. John A. Johnson Contracting Corp. v. United States, 132 Ct. Cl. 645, 658–661, 132 F.Supp. 698, 704–

705 (1955), and certainly prejudice to defendant would be relevant and material in the exercise of such judgment. As previously stated, the very purpose of notice is to prevent disadvantage to the defendant. Of course, the exercise of such judgment must be reasonable, not arbitrary or capricious. Since there was obviously substantial prejudice to defendant in this case, it cannot be held as a matter of law that the Board (in sustaining the contracting officer) erred in its holding that the notice of claim was untimely because of unreasonable delay and resulting prejudice to defendant. This is true irrespective of the Board's reference to the doctrine of laches, or the applicability of such doctrine in this or any other case.

Plaintiff further assigns as error by the Board its holding that notice of claim is required for a constructive change. The classical example of a constructive change is where the contracting officer directs performance of work on his interpretation that it is required by the specifications, with the contractor protesting that it is not. On review by the Board, the contractor's interpretation is upheld, and the ruling is that extra work was required. This is a constructive change, not requiring issuance of the required written change order under the Changes article. · No notice of claim need be presented within the specific number of days allowed by such article, and the filing of a claim with the period of administration of the contract suffices. A review of the decisions of various contract appeals boards, cited by plaintiff, which apply the constructive change doctrine, indicates that the contracting officer knew in such cases that the contractor had to perform "extra work" if his interpretation of the specifications was in error. However, plaintiff's contention cannot reasonably be sustained that such doctrine should be extended to apply to a case, such as the subject one, where the contracting officer did not know and could not reasonably be held to have known under the circumstances that extra work would result from the decision which he made. In Korshoj Constr. Co., 66–1 BCA ¶ 5339, IBCA held at pp. 25073–25074 that in the absence of a written change order, the "30-day" requirement of the Changes article for submission of a claim was not applicable, but that the claim for changed excavation had to be denied (even though resulting from government staking) because the interests of the government were prejudiced for lack of protest for the reason (among others) that the government could have alleviated problems of rehandling or releveling excavated materials by obtaining additional right-of-way or disposal areas. See also contract appeals board decisions cited in the *Korshoj* decision.

Plaintiff's last assignment of error of law is that since the contracting officer did not mention prejudice in his decision letter or in his findings of fact, the Board erred in considering the issue of prejudice. The short answer to this contention is that such an issue of fact is inherent in the question as to whether there was an abuse of discretion by the contracting officer in his refusal to consider plaintiff's claim on the merits for lack of timely notice, and it was the duty of the Board to consider every relevant and material aspect of that problem, particularly when presented by defendant without objection by the plaintiff.

## CONCLUSION OF LAW

On review of the administrative record herein, it is concluded that plaintiff's assignment of errors of the Veterans Administration Contract Appeals Board should not be sustained; that the Board's findings of fact are supported by substantial evidence; that the Board's decision was not fraudulent, capricious, arbitrary, or so grossly erroneous as necessarily to imply bad faith, but correct as a matter of law; that the ruling of the Board should be sustained that plaintiff failed timely to present to defendant's contracting officer its claim under the Changes in Service article of its contract with defendant; and plaintiff's petition is dismissed.