**WILLIAMSBURG DRAPERY COM-PANY, Inc.**

v.

**The UNITED STATES.**

**No. 67–63.**

United States Court of Claims.

March 14, 1969.

———◆———

Robert F. Rolnick, Washington, D. C., attorney of record, for plaintiff. Danzansky & Dickey and Jack Rephan, Washington, D. C., of counsel.

Steven L. Cohen, with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant. Thomas J. Lydon, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

* This opinion is based on that of Trial Commissioner C. Murray Bernhardt, with deletions and modifications.

1. The default article is quoted in footnote 1 to the parent opinion.

**ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

PER CURIAM:*

This is the residuum from the court's earlier opinion (Williamsburg Drapery Co. v. United States, 177 Ct.Cl. 776, 369 F.2d 729 (1966)), dismissing all of the plaintiff's claims save the Bottom Hems dispute, which was remanded to the Armed Services Board of Contract Appeals for redetermination on the basis of underlying facts, and thence resubmitted to the court for review on the parties' summary judgment motions and briefs addressed to the Board's fresh findings (ASBCA Nos. 5484, 5561, 68–1 BCA ¶ 7002, at 32,389), which denied recovery. We hold that plaintiff is not entitled to recover, and grant the defendant's motion for summary judgment as to the remnant in issue.

Recapitulating the highlights of the court's earlier opinion, partial termination of the contract (to supply 8,353 curtains for the Air Force Academy) on December 30, 1958, for incipient default, and termination on February 3, 1959, of virtually all of the remainder for default,[1] precipitated an appeal to the Board, followed by a review proceeding in this court, to test the plaintiff's demand that the termination for cause be converted into a termination for convenience of the Government, because of seven specific delays alleged to justify time extensions sufficient if granted to invalidate the termination. The Board rejected all of the plaintiff's specific claims except that as to Handstitching of Pleats, which was ruled to warrant a four-day or five-day time extension for delivery of the first installment of curtains due January 15, 1959, depending on whether one considered the full contract installment or that installment as reduced by the partial termination.[2]

2. Fewer curtains translated into less aggregate time for the extra work.

The court agreed with the Board on all claims except the Bottom Hems claim, which as stated was remanded to the Board for ascertainment of basic facts. On the basis of its remand hearing on this isolated issue, the Board on April 22, 1968, rejected the Bottom Hems claim in 19 separate findings of fact. The plaintiff asserts as to each and every one of the Board's findings that in whole or in specified part it was not supported by substantial evidence and was arbitrary and capricious.

The Board's findings numbered 1 through 5 provide the chapter and verse support for finding 6 that "The hem change of [Supplemental Agreement] No. 2 was, therefore, not forced upon, but on the contrary originated with, appellant." This conclusion, reached by the Board's prerogative of discounting the credibility of plaintiff's main witness, was clearly supported by the record.

The original specifications for the curtain procurement in suit contemplated that a three-inch bottom hem would be formed by folding over the bottom selvage of the drape twice, then sewing it through three thicknesses at the uppermost edge of the hem thus formed. The hem would first be "sized", that is to say, the cloth would be folded over twice to the proper dimension, and pinned at both ends and in the center to hold the hem shape ready for sewing. It would then be fed into a sewing machine through a "folder" attachment, which automated the sewing operation to the extent of relieving the operator of the task of manually guiding a straight line of stitches.

It is customary to insert weights in the lower edge of curtains to enhance their hung appearance. When the hems in issue were sized and sewn, it was originally planned that a prefabricated removable tape containing regularly spaced flat lead weights would be threaded inside the completed hem and secured thereto at each end by a snap fastener.

In response to a suggestion by plaintiff which was adopted by Government representatives after some consultation, it was decided to use a lighter lead weight than specified in order to retard the deterioration of the hem fabric which the heavier prescribed weights would be apt to cause. Paragraph 2 of Supplemental Agreement No. 2, issued in October 1958, amended the specifications so as to substitute a lighter weight consisting of a bead chain of small lead shot interspersed through a knitted cloth sleeve. Because this lighter type of weighted tape could not be threaded satisfactorily through a completed bottom hem as the superseded lead weight tape could have been, it was necessary to alter the manufacturing method by folding the new type weighted tape into the material of the hem during the sizing operation, then fastening it into place in the hem fabric with numerous pins to prevent slippage during the sewing of the hem. The added thickness of the hem with the weighted tape inside, and the large number of securing pins, precluded the newly sized hem from being fed into the sewing machines through the folder attachment, and required instead that it be guided by the operator's hand through the machine stitching procedure, removing pins as the sewing progressed and making time-consuming measurements to keep on course. The Board found, on challenged evidence, that each hem took 13 minutes longer to complete than it otherwise would have under the superseded hem specification—ten minutes extra for the sizing and three minutes more for the sewing.

Adverting once more to the Board's opinion, its findings 7 through 12 relate to the contractor's failure to make a timely demand for additional compensation or a time extension because of the Bottom Hems change, and provide the basis for the Board's finding number 13 that " * * * appellant did not claim an extension of delivery time on the basis of the bottom hem change until the very end of December 1958." The record amply supports the finding in so far as it is challenged. Although at the time that Supplemental Agreement No. 2 was discussed the plaintiff knew

—and the Government did not—that section 2 of the Agreement changing the bottom hem weights would take more time, at no time from then up to and including the filing of companion appeal petitions to the Board in March and April 1959 did the plaintiff make any written request for an extension of time ascribing as specific reason the Bottom Hems problem. This despite a series of letters through January 1959 demanding time extensions for various other performance headaches, including those arising from Supplemental Agreement No. 2 referring, however, only to the First Article aspect of the Supplemental Agreement and never directly or by reasonable inference to the Bottom Hems aspect. Oral mention of such a claim by plaintiff at the time of the first partial termination on December 30, 1958, was found by the Board.

The Board has, in findings 14 through 19, projected a 13-minutes per curtain determination of extra time due to the Bottom Hems change to conclude that plaintiff would on that account have been entitled to a 12-day time extension on the basis of the first installment of curtains due under the contract on January 15, 1959, or 8 days on the basis of the total due in the first installment as reduced by the partial termination of December 30, 1958. Applying these after-the-fact extensions (plus that for Handstitching of Pleats, supra) to the January 15, 1959 due date of the first installment, the Board reconstructed the first delivery dates to be February 2 or 9, depending on whether it was the full or the reduced quantity (see footnote 2). The Board then described the contractor's state of progress and reached the conclusion that partial termination on December 30, 1958, for "failure to make progress as to endanger performance" would have been justified even if the due date for the first installment had been extended from January 15 to February 9, 1959. By similar reconstruction the Board also found that the Government's termination for default on February 3, 1959, of all remaining contract items except four would have been justified even if the first installment delivery date for the quantity reduced by the partial termination had been extended from January 15 to February 2, 1959, because the latter date would not have been met.

The plaintiff challenges the accuracy of the Board's mathematics, but the challenge is directed primarily to the Board's conclusion that, in the effective 6½ hours of the average 8-hour working day, the plaintiff could have sized 84 curtains, while the correct figure (per plaintiff) would have been 78 curtains, which would have entitled the plaintiff to a 14-day extension of time instead of the 12 days found by the Board. Given a 14-day extension the revised due dates would have been February 11 for the original installment and February 3 for the reduced installment, in which latter case the termination on February 3 was premature. Realizing that these reconstructed performance figures are only estimates and are based on approximations, we think the Board's figures lie within the zone of reasonableness provided by the record and we see no basis for our disturbing them simply because another figure might also be supportable. Thus, at the time of partial termination on December 30, 1958, there was reasonable ground for the contracting officer to believe not only that the plaintiff would not meet the January 15 due date for the first installment of curtains, but also that it would not have been able to meet it by February 9 had time extensions to that date been granted. And at the time of default termination on February 3 there was equally valid reason for the contracting officer to terminate the balance of the contract since plaintiff would not in all likelihood have delivered the reduced first installment by then. These conclusions are fortified by the fact that on January 30, 1959, the plaintiff admitted that it would not be able to meet the reduced first installment requirements until the end of February 1959. It is no absolution for the plaintiff to say that

the partial termination of December 30, followed by threats of complete termination, and a final termination on February 3, 1959, so disheartened it as to hinder performance meanwhile. Nor does it help the plaintiff to maintain that, had the delivery dates been extended as indicated, it would have been able to step up performance by adding another shift to the Bottom Hem sizing operation in order to eliminate a production bottleneck and accelerate completion. It is implicit in the Board's findings that all the material necessary to make the curtains was not in transit by the end of December 1958, as it would have had to be to meet even the extended deadlines. *See also* 177 Ct.Cl. at 800, 369 F.2d at 742–43 (1966).

The defendant's cross-motion for summary judgment is granted, the plaintiff's motion is denied, and the petition is dismissed.