**ICONCO**

*v.*

**The UNITED STATES.**

No. 617–83C.

United States Claims Court.

Aug. 1, 1984.

---

Irvin Grant, Santa Monica, Cal., for plaintiff. Grant & Popovich, Santa Monica, Cal., of counsel.

Robert G. Giertz, Washington, D.C., with whom was Acting Assistant Attorney General Richard K. Willard, Washington, D.C., attorney of record for defendant. Norman D. Menegat, U.S. Postal Service, Washington, D.C., of counsel.

## OPINION

LYDON, Judge:

This government contract case involves review, under standards of the Wunderlich Act 41 U.S.C. §§ 321–322 (1976), of a decision by the Postal Service Board of Contract Appeals (Board) denying plaintiff's claims for (1) additional compensation for removal of 231 cubic yards of excavation, and (2) additional compensation because of the Postal Service's refusal to permit plaintiff to use certain excavated soil for backfilling and its refusal to pay plaintiff for its replacement with structural fill. On review, it is concluded that the Board's decision is correct in fact and in law.

On November 23, 1977, plaintiff was awarded a contract to perform certain demolition work relative to preparation of a site for the construction of a United States Postal Service facility, known as the East Carrier Annex, in Seattle, Washington. The contract price was $149,290. The work involved demolition and removal of buildings which was followed by clearing, filling, compaction and grading of the work site to conform to contours and elevations stated in the contract documents.

The scope of this court's review in a Wunderlich Act case is narrow and limited. It is limited generally to determining whether there is substantial evidence, *i.e.*, such evidence as might convince a reasonable person, to support the conclusion reached by the Board or agency. *Koppers Co. v. United States*, 186 Ct.Cl. 142, 148, 405 F.2d 554, 557 (1968).

In its first claim, plaintiff sought recovery for the removal of 251 cubic yards of unsuitable material, or $3,639.50. Plaintiff

claimed it had removed, at the direction of the Soils Engineer [1], 586 cubic yards of unsuitable material whereas the Postal Service contended plaintiff only removed 355 cubic yards of said material. Plaintiff's 251 cubic yard claim figure is premised on the view that the Postal Service only credited plaintiff with removing 335 cubic yards of unsuitable material. However, the Board found, and correctly so, that the Postal Service credited plaintiff with removing 355 cubic yards. Thus, the correct cubic yardage figure in dispute is 231 cubic yards (586–355 = 231).

The contract provided that removal by plaintiff of unsuitable "in-place" soils and structural fill replacement on the prior approval of the contracting officer would entitle it to payment on the basis of $14.50 per cubic yard "in-place" measurement. The contract specifications provided in pertinent part:

Only that material determined to be unsuitable in the opinion of the Soils Engineer shall be removed below the specified stripped surface. For the 'in place' yardage of unsuitable material so removed the Contractor will receive compensation at the unit price [$14.50 per cubic yard] set forth by the contractor's bid * * *. The 'in place' volume measurement shall be made by the contractor, at no expense to the owner, using surveying methods determined suitable by the Soils Engineer. * * *

■ As to the first claim, the dispute is clearly factual. The majority of the Board found that plaintiff failed to show by a preponderance of the evidence that the material claimed to have been excavated, and for which payment was sought, was unsuitable, or that the Soils Engineer directed that it be removed on February 24, 1978, or any other date. The Board's use of the preponderance test is a proper one. *See Davis v. United States*, 180 Ct.Cl. 20, 32 (1967). *See also Wm. A. Smith Contract-*

*ing Co. v. United States*, 188 Ct.Cl. 1062, 1085–1086, 412 F.2d 1325, 1337–1338 (1969).

■ The evidence bearing on plaintiff's first claim was conflicting. In reaching its decision the Board majority clearly accepted the testimony of the Postal Service witness, the Soils Engineer, and other supportive exhibits, over the testimony and supportive exhibits of the plaintiff's witnesses. Without more, the Board's findings must be accepted. *See Wm. A. Smith Contracting Co. v. United States, supra*, 188 Ct.Cl. at 1076–1077, 412 F.2d at 1333. Where two versions of the facts are equally probable, this court is constrained to favor the version accepted by the Board. *Williamsburg Drapery Co. v. United States*, 177 Ct.Cl. 776, 783, 369 F.2d 729, 733 (1966). The testimony of the Soils Engineer was that the cubic yardage for which plaintiff sought compensation was located in an area that was not excavated at his direction. It is the function of the Board, not the court, to resolve conflicts in evidence. *See Dean Constr. Co. v. United States*, 188 Ct.Cl. 62, 67–68, 411 F.2d 1238, 1241, 1242 (1969); *General Dynamics Corp. v. United States*, 187 Ct.Cl. 597, 606, 410 F.2d 404, 409 (1969). Further, credibility of witnesses is clearly a Board function and this function is not to be disregarded merely because the testimony was heard by only one member of the three-member Board panel whose decision is under review. *See Sternberger v. United States*, 185 Ct.Cl. 528, 536–537, 401 F.2d 1012, 1017 (1968); *see also Eggers & Higgins v. United States*, 185 Ct.Cl. 765, 782, 403 F.2d 225, 234 (1968).

■ A review of the entire record in this case establishes that the Board findings and determination on plaintiff's first claim are supported by substantial evidence. *See Koppers Co. v. United States, supra*, 186 Ct.Cl. at 148–151, 405 F.2d at 556, 559.[2] The Board's determinations on

---

1. The soils engineer on this job, a geotechnical engineer, was a member of the Seattle, Washington, engineering firm of Shannon and Wilson, Inc. This firm was engaged by the Postal

Service to assist it relative to performance of the contract.

2. The court is not required to reweigh every piece of evidence which was introduced before

said claim most certainly lie within the zone of reasonableness provided by the record before it. *See Williamsburg Drapery Co. v. United States,* 187 Ct.Cl. 298, 303, 407 F.2d 1342, 1344 (1969). Plaintiff has failed to meet its heavy burden of establishing that, on the record compiled before the Board, the Board's findings are not supported by substantial evidence. *See Arundel Corp. v. United States,* 207 Ct.Cl. 84, 98, 515 F.2d 1116, 1124 (1975).

In its second claim, plaintiff sought recovery, in the amount of $123,171.41, for the quantity of structural fill it furnished to replace material removed by plaintiff in excavating subsurface structures.

Under the contract, plaintiff was required to remove buried concrete walls, foundations and footings which were located on the work site. Some of these footings extended as far as 10 feet below the surface. Since the contract did not state the method or equipment to be employed in removing subsurface structures, the plaintiff was free to select whatever method and equipment it felt was necessary to do the job. Plaintiff elected to use heavy equipment to do the job. In order to facilitate removal of these subsurface structures by means of heavy equipment, plaintiff excavated deeper than 18 inches along one or both sides of the structures. The excavated material was stockpiled near the point of excavation. Plaintiff expected to use this stockpiled material to backfill the excavated area unless it was determined by the Soils Engineer to be unsuitable material. After the work was substantially under way, plaintiff asked the Soils Engineer to inspect some of the stockpiled material to see if any of it was unsuitable. At this time plaintiff was advised by the Postal Service that the stockpiled material could not be used for backfilling and that plaintiff was required, under the contract, to remove said material from the site and replace it with structural fill.

■ Plaintiff claimed before the Board that the Postal Service's refusal to allow it to use the excavated stockpiled soil for back filling and the Postal Service's refusal to pay for its replacement with structural fill were in violation of contract provisions. As to the second claim, the basic issue is clearly legal, *i.e.,* interpretation and construction of the contract provisions.[3] As a result, the matter is to be decided by the court unfettered by any prior administrative determination. *Truong Xuan Truc v. United States,* 212 Ct.Cl. 51, 64 (1976); *Beryllium Corp. v. United States,* 196 Ct.Cl. 12, 18–19, 449 F.2d 362, 366 (1971). This is not to say, however, that the Board's determination should be completely ignored for interpretation of contract provisions by Boards' having expertise in such matters can be helpful and at times compelling. *See Hegeman-Harris & Co. v. United States,* 194 Ct.Cl. 574, 580, 440 F.2d 1009, 1011 (1971).

Subsequent to the solicitation for bids, some contractors raised questions about difficulty in bidding the job. They claimed they had no idea how much of the parking area (the area which is the subject of plaintiff's second claim) material would be unsuitable. As a result of these inquiries, the

the Board to see if the court would agree with each finding were the court to make it itself. The critical inquiry the court does make is whether the Board, in resolving the matter, as it did, on the basis of disputed facts, had substantial evidence to support its determination. *Dean Constr. Co. v. United States,* 188 Ct.Cl. 62, 67–68, 411 F.2d 1238, 1241 (1969).

3. Plaintiff, in its moving brief, states that the following finding of fact by the Board is not based on substantial evidence: "The placement of soil into stockpile during removal of subsurface structures constituted excavation deeper than 18 inches (Decision A–7, 11)." No such finding appears in the Board decision. On page 7 of the Board decision is the finding: "In order to facilitate removal of these buried structures by heavy equipment, the contractor excavated deeper than 18 inches along one or both sides of the footings (Tr. 71, 102)." This finding is supported by substantial evidence in the record as a whole. On page 11 of the Board decision is the statement: "However, the dispute before us involves excavations which were deeper than 18 inches." This is a correct statement of the dispute in question.

Postal Service issued Amendment No. 1 to the specifications. This amendment added a unit price which covered the removal of unsuitable material and its replacement with structural fill. This amendment also added the following pertinent language to Article D of Section 0220–2:

> 7. Only that material determined to be unsuitable in the opinion of the Soils Engineer shall be removed below the specified stripped surface. For the "in-place" yardage of unsuitable material so removed, the Contractor will receive compensation at the unit price set forth by contractor's bid. This unit price shall be full compensation for all costs, including overhead, taxes, profit, etc., for excavations, disposal, leveling, proof-rolling bottom of new excavation, and all other operations including replacement with suitably compacted structural fill. *If excavations by the Contractor extend deeper than the 18 inches considered as the minimum thickness for structural fill, and are areas not determined unsuitable by the Soils Engineer, no payment will be made at the unit cost set forth below. Such extra excavation and satisfactory replacement with structural fill shall be at the Contractor's expense.* * * * [Emphasis supplied.] [4]

The Board found that a day or two before bid opening, plaintiff's office manager and estimator sought clarification from the Post Office project manager relative to the original contract provisions and the changes made by Amendment No. 01. Although the estimator testified before the

Board, he did not remember what his exact questions were. The Board correctly found that the record was silent regarding exactly what information was sought and the response provided.

■ The dispute before the Board involved excavations around subsurface structures which were deeper than 18 inches. The language of Amendment No. 01, reasonably read, covers such excavations. Before the Board, plaintiff contended that Amendment No. 01 was not applicable to excavations made in connection with subsurface structures. In rejecting this position, the Board stated in pertinent part:

> Prior to the submission of its bid the contractor was aware of the addition of specification provision D. 7 and sought clarification as to its meaning. If the contractor believed that this provision was not applicable to excavations made in connection with the removal of buried foundations, it should have made certain that the Postal Service was of the same view. See *S.O.G. of Arkansas v. United States*, 212 Ct.Cl. 125, 546 F.2d 367 (1976).

The Board concluded, after review of the contract documents, that the specifications as initially issued relative to when plaintiff would be paid for replacing excavated material with structural fill lacked clarity. However, the Board based its denial of plaintiff's claim on the above-mentioned failure of plaintiff to seek clarification of the scope and reach of Amendment No. 01 and did not decide whose interpretation of the contract was correct.

---

**4.** The record makes it clear that excavations for which plaintiff seeks compensation extended deeper than 18 inches, that is below the finished grade, and involved areas not determined unsuitable by the Soils Engineer. Plaintiff, without obtaining a determination from the Soils Engineer beforehand as to the suitability of the soil, excavated the areas around the footings, stockpiled the soil so excavated, and then asked the Soils Engineer to determine suitability of the stockpiled soil. There is a significant difference in determining the firm unyielding capacity of in-place undisturbed soil and soil which has been removed (disturbed) and stockpiled. Since the soil had been disturbed, the Soils Engineer, and properly so, refused to do so. *See* section 0220–2 M.2., *supra*. Suitability of in-place undisturbed soils was determined by probing the in-place soils with a probing bar to determine resistance and compaction thereof. Contrary to the assertion of plaintiff, the Board did not find that the soil excavated below the finished grade was suitable soil. Indeed, there is no way, on this record, to determine whether said soil was suitable or not.

■ The record makes it clear that plaintiff, in preparing its bid, contemplated removing the subsurface structures, *i.e.*, concrete footings, with heaving equipment.[5] This method, of necessity, involved the removal of a great deal of excavation on either side of the concrete footings. The excavatings expected and made by plaintiff were 5 to 12 feet wide and 10 feet deep. Given this plan of removal of subsurface structures, it was incumbent on plaintiff to inquire of the postal service if Amendment No. 01 applied to such large scale excavations if it intended "to bridge the crevasse" in its own favor.[6] *Beacon Constr. Co. v. United States*, 161 Ct.Cl. 1, 6–7, 314 F.2d 501, 503–504 (1963).

Assuming *arguendo*, that plaintiff was not required to seek clarification of Amendment No. 01, a reasonable reading of the entire contract documents, as amended, buttressed by the totality of the record before the Board, supports the conclusion that the Post Office's refusal to pay plaintiff for replacement of excavated material below 18 inches with structural fill was in accord with the contract provisions as a whole and thus correct as a matter of law.

■ The specifications, as initially issued, stated that "[a]ll filling at the site shall be considered structural fill." (Section 0020–1 A.3), and that "[s]tructural fill material shall be an imported [material] * * *." (Section 0020–2 E.) These sections, without more, clearly indicate that all material excavated by plaintiff had to be replaced by imported structural fill. On the other hand, other sections of the initially issued specifications could be read to suggest that excavated material might be utilized as structural fill under certain conditions. For example, section 0220–2 D.4., dealing with proof rolling of the stripped surface (*i.e.*, that finished surface that remained after excavation sufficient to provide for 18 inches of structural fill was reached), provided in pertinent part:

> * * * Should this rolling reveal the presence of unsuitable materials, such materials shall be removed and replaced with structural fill, or alternatively dried or moistened as may be required, reworked and compacted until a firm unyielding surface is ready for structural fill placement.[7]

Further, section 0220–2 M.2. provided:

> Any suitable natural site soils (upon which structural fill is to be placed) that, in the opinion of the Soils Engineer, becomes unduly disturbed by the Contractor's operations shall be removed and replaced with suitable compacted soils,

---

**5.** There is no differing site condition issue in this case. The subsurface structures were expected items. Plaintiff, in preparing its bid, took their removal in account.

**6.** Plaintiff claims that the holdings in *S.O.G. of Arkansas v. United States*, 212 Ct.Cl. 125, 128–130, 546 F.2d 367, 369 (1976) and *Beacon Constr. Co. v. United States*, 161 Ct.Cl. 1, 6–7, 314 F.2d 501, 503–504 (1963) are not applicable because the specifications in question are not patently ambiguous. However, accepting plaintiff's argument that Amendment No. 01 does not apply to excavations in the area where subsurface structures were located does create a patent ambiguity in said Amendment as far as plaintiff's plan of operation was concerned, and thus plaintiff had a responsibility to seek clarification and resolution thereof before bidding since its plan of operation required extensive excavation work. A fair reading of Amendment No. 01 by reasonable men standing in the parties shoes supports the conclusion that the excava-

tions discussed therein applied to all contract excavations and did not intend to, nor did it, exclude from its reach excavation around and about subsurface structures such as concrete footings. *See Deloro Smelting & Refining Co. v. United States*, 161 Ct.Cl. 489, 495, 317 F.2d 382, 386 (1963).

**7.** It is well settled that a contract should be construed so as to give effect and meaning to all of its provisions. *W.G. Cornell Co. v. United States*, 179 Ct.Cl. 651, 666, 376 F.2d 299, 309 (1967). Plaintiff argues that in refusing to allow it to rework and condition the stockpiled soil so as to achieve a firm unyielding surface, the Postal Service denied effect and meaning to section 0220–2 D.4. Plaintiff's argument is without merit since section 0220–2 D.4, reasonably read, relates to proof-rolling of "in-place" and previously undisturbed soils and does not apply to the removal of soils that have not been proof-rolled. The soils in question in this case had not been proof-rolled.

all at no cost to the Owner [*i.e.*, the Post Office].

The parties herein are at odds as to whether "suitable compacted soil" meant structural imported fill or reworked excavated site material. On this record, and reading the contract as a whole, it is not unreasonable to interpret "suitable compacted soils" to mean "structural fill." Moreover, under the circumstances, if plaintiff felt that "suitable compacted soils" was not the equivalent of "structural fill" and meant reworked and reconditioned soils, it is not unreasonable, on this record, to impose on it the duty to have inquired and sought clarification of such language, especially in view of another contract provision that required that all fill be structural fill. *See S.O.G. of Arkansas v. United States, supra; Beacon Constr. Co. v. United States, supra.*

The specifications, it must be conceded, could have been drafted with greater clarity.[8] However, a reading of the contract as a whole, including Amendment No. 01, in the context of this record, does not warrant a conclusion that the specifications were ambiguous "so as to require that the scales be weighted against the Government." *See N. Fiorito Co. v. United States,* 189 Ct.Cl. 215, 222, 416 F.2d 1284, 1288 (1969). Accordingly, since the plaintiff excavated areas not determined unsuitable by the Soils Engineer, such extra excavation and replacement with structural fill was to be at the plaintiff's expense.

As a result of the above discussion, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, with plaintiff's complaint to be dismissed.

8. Plaintiff stresses the fact that in a subsequent similar solicitation, the Post Office drafted specifications with greater clarity. The record shows that the drafter of the specifications in issue and the subsequent specifications were one and the same. The drafter testified before the Board that he felt the specifications in issue were clear but because of plaintiff's claim then pending he made the subsequent specifications clearer in certain respects. Plaintiff's effort to read into this circumstance an admission that

the solicitation in question was ambiguous cannot be accepted. As noted in *Martin Lane Co. v. United States,* 193 Ct.Cl. 203, 218, 432 F.2d 1013, 1021 (1970), " * * * clarification in a subsequent procurement of language which has theretofore given rise to disagreement is only wise. The clarification cannot serve to forgive an unreasonable interpretation of the earlier language, nor properly be regarded as an admission that it was in fact ambiguous. * * *"