Contracts; disputes; interpretation; ambiguity; clarification, necessity for seeking. — On February 8, 1980 the court entered the following order:
*621 Before Kashiwa, Judge, Presiding, Kunzig and Bennett, Judges.
This construction contract case is before the court on cross-motions for summary judgment. Plaintiff contracted with defendant to re-side military housing units at Beale Air Force Base, California. A dispute over interpretation of the contract’s specifications developed and plaintiff now seeks Wunderlich Act review, 41 U.S.C. §§ 321, 322 (1976) of a decision of the Armed Services Board of Contract Appeals (hereinafter, "Board”), Yancey Company, ASBCA No. 21830, 78-1 BCA ¶ 13,162 (1978), which denied plaintiffs claim for additional compensation for alleged additional work. We conclude the Board’s decision was neither arbitrary, nor capricious, was supported by substantial evidence, and was correct as a matter of law.
Under Contract No. F04666-76-90093, dated September 9, 1976, plaintiff agreed to furnish:
... all plant, labor, materials and equipment and perform all operations required to remove 1,500 SQ of asbestos shingles from military family housing units and replace them with 1,500 SQ of new prefinished siding.[1]
"SQ” is a "square” which is 100 square feet. The asbestos shingles plaintiff contracted to remove (and did remove) are sold by "SQ” and this is synonymous with coverage, or building coverage; that is, one "SQ” of asbestos shingles will cover 100 square feet of wall area. However, because the shingles overlap when applied, one "SQ” of shingles, if not applied and thus not overlapping would actually cover an area in excess of 100 square feet. The dispute here arises because the prefinished siding plaintiff put in place of the shingles also overlaps when installed, but to a degree greater than the asbestos shingles. Nor is the prefinished siding sold by "SQ” but rather in units of 1,000 square feet of material, without reference to wall coverage. Con *622 sequently, more than 150,000 square feet of prefinished siding (1,500 "SQ” x 100) is necessary to cover an area uncovered by removal of 1,500 "SQ” of asbestos shingles, though the contract might possibly be construed as implying the two are equal.
Plaintiff bid on the contract believing only 150,000 square feet of prefinished siding (plus an amount to compensate for waste) was required and only enough asbestos siding to apply 150,000 square feet of siding would be removed. Defendant, however, insisted plaintiff was required to provide new siding to cover the entire area bared after 1,500 "SQ” of asbestos shingles had been removed. Under defendant’s interpretation of the contract plaintiff had to provide about 20 percent more prefinished siding than plaintiff calculated when preparing its bid.
Plaintiff performed the contract according to defendant’s interpretation of the specifications and sought additional compensation which was denied by the contracting officer and on appeal by the Board, Yancey, supra. The Board decided plaintiffs interpretation of the contract’s specifications was unreasonable because it would mean some of the wall area would be left uncovered, "a condition which would be manifestly inappropriate,” Yancey, supra, at 64, 314. The contractor, the Board concluded, "should have made inquiry” concerning the matter, id.
Before this court plaintiff contends its interpretation of the contract was reasonable in light of the contract’s "Measurement and Payment” clause[2] and the fact that three or four other bidders on the contract interpreted the specifications as plaintiff did.
We conclude the Board’s decision must be affirmed. Our decision, of course, must comport with Wunderlich standards. The Board concluded plaintiffs interpretation of the contract was unreasonable and we are not convinced that decision was fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith or not supported by substantial evidence. Despite the contract’s *623 clear requirement that 1,500 "SQ” of asbestos shingles were to the removed and replaced, plaintiff interpreted the contract in such a way that, of necessity, less than 1,500 "SQ” of asbestos shingles would be removed. With both the shingles and the siding overlapping, and in differing degrees, the situation virtually cries aloud for plaintiff to inquire. Even considering the language of the Measurement and Payment clause, this discrepancy in the contract’s terms was of sufficient magnitude to alert plaintiff and place upon it the duty to inquire. Space Corp. v. United States, 200 Ct. Cl. 1, 5, 470 F. 2d 536, 538 (1972). Plaintiff failed so to do and is therefore precluded from claiming the benefit of the doctrine of contra proferentem, i.e., that an ambiguity in a Government contract will be construed against the Government as the drafter of the instrument, see Bennett v. United States, 178 Ct. Cl. 61, 64, 371 F. 2d 859, 861 (1967).
Accordingly, upon consideration of the parties’ submissions and after oral argument, defendant’s motion for summary judgment is granted, plaintiffs cross-motion for summary judgment is denied, and the petition is dismissed.

 This is the job description as contained in the contract’s "Contract for (work to be performed)” section. Furthermore, the contract’s bid schedule provided:
Item
Nr. Prescription Qty Unit Price Total
1 Replace 1,500 SQ of shingles with new prefinished siding 1,500 SQ 134.84 202,260.00

 11. measurement and payment. The unit of measurement shall be by the square foot of applied siding. Openings of 12 square feet or greater in the applied siding shall be deducted from the measured area for payment purposes. Payment for work under this contract shall be in accordance with the bid schedule on a square foot basis.