*566 This construction contract case is before the court on cross-motions for summary judgment. The plaintiff, Robert McMullan & Son., Inc. (McMullan), sues on behalf of its subcontractor, Stirrett-Johnsen, Inc. (Stirrett), which performed excavation work in connection with McMullan’s contracts with defendant to build a steam distribution reduction project at the Puget Sound Naval Shipyard (PSNS), Bremerton, Washington. A dispute under the "Differing Site Conditions” clause of the contract arose and plaintiff now seeks Wunderlich Act review, 41 U.S.C. §§321, 322 (1976), of a decision of the Armed Services Board of Contract Appeals (Board), which denied plaintiffs claims for an equitable adjustment. We conclude the Board’s decision was neither arbitrary nor capricious, was supported by substantial evidence and was correct as a matter of law.
Under Contract No. 62474-75-C-6398, dated March 26, 1976, plaintiff agreed to install, as part of the replacement of a steam heating system, six fuel oil tanks near six buildings at PSNS. The present controversy arose from the excavation for one such tank, adjacent to Building 502.
The excavation was required to be twelve feet deep, twelve feet wide, and twenty five feet long. The record noted that because Stirrett had not previously excavated to the depth required for the Building 502 tank, it subcontracted with Manning Construction (Manning) to excavate the 502 site. A pre-bid notice was issued to prospective bidders which warned them to take such steps as may be reasonably necessary to ascertain the general and local conditions which could affect the work and the cost thereof. Neither the bid specifications or drawings, nor the contract, included any data from boring samples or other soil investigations of the areas to be excavated. Significantly, neither plaintiff nor Stirrett nor Manning conducted any soil tests in the area or inquired of the Navy whether it had any soil profiles in the area of Building 502.
The excavation work adjacent to Building 502 was commenced on August 5, 1976. When the excavation reached the eight foot depth, a slight water seepage was encountered. By the next day, the water had risen to a level approximately five feet below the surface. Substantial *567 sloughting (crumbling and falling) of soil had occurred. Plaintiff decided to drain the excavation and backfill it with sand. The Resident Officer in Charge of Construction (ROICC) was then given notice that plaintiff considered the problem to be a "Differing Site Condition”[1] under the contract and was asked for instructions as to how to proceed. The Assistant ROICC (AROICC) directed plaintiff to resume work in accordance with the plans and specifications. By letter of August 24, 1976, the AROICC rejected plaintiffs contention that it had encountered a "Differing Site Condition”, stating that based on the information it had received, the soils condition which plaintiff encountered at the 502 site "should have been anticipated by any prudent contractor bidding on the subject contract.” Plaintiff completed the contract according to defendant’s instructions and sought additional compensation which was denied by the contracting officer and on appeal by the Board. The Board, after careful analysis of the evidence, concluded that the subsurface conditions actuadly encountered at the 502 site were not materially different from the usual conditions in the area, and that a "Category II” changed conditions did not exist. Plaintiff attacks the Board’s decision as arbitrary, capricious, and unsupported by substantial evidence.
We conclude the Board’s decision must be affirmed. Our decision, of course, must comport with Wunderlich standards. Although the Board’s decision in this case entails to some extent an interpretation of the "Differing Site Conditions” provision of the contract, it is evident that the factual issues are more central to the decision and that the Wunderlich standard of review for factual determinations is required. See Charles T. Parker Constr. Co. v. United States, 193 Ct.Cl. 320, 333-34, 433 F.2d 771, 778 (1970). Here, plaintiff and its subcontractors conducted a cursory investigation of the site prior to plaintiffs submission of a *568 bid. They made no apparent effort to ascertain subsurface conditions, e.g., by core sample.
The Board found the testimony of the Government’s expert to be "most persuasive.” It was the opinion of the expert that none of the subsurface conditions at the 502 site were unusual, and that a contractor could anticipate subsurface drainage from the hills located on two sides of the site. "The Board of Appeals, as the original trier of fact, is in the best position to determine the credibility of the witnesses examined and the weight to be accorded to the testimony presented by the witnesses.” Wm. A. Smith Constr. Co. v. United States, 188 Ct.Cl. 1062, 1077, 412 F.2d 1325, 1333 (1969); See Arundel Corp. v. United States, 207 Ct.Cl. 84, 515 F.2d 1116 (1975).
Despite plaintiffs position, there is sufficient evidence in the Board’s findings of fact to constitute substantial evidence that the subsurface conditions actually encountered at the 502 site were not materially different from the usual conditions in the area, and that a "Category II” condition did not exist. Moreover, the Board’s decision is correct in its interpretation and as a matter of law.
All other arguments raised by the parties, though not directly addressed by this order, have been examined and found to be without merit.
Accordingly, it is therefore ordered, on consideration of the record and parties’ submissions, but without oral argument, that plaintiffs motion for summary judgment is denied, defendant’s cross-motion for summary judgment is granted, and the petition is dismissed.

 To be granted relief under the Differing Site Conditions clause of the contract, the conditions encountered must fall within one of two distinct sets of circumstances, often referred to as "Category I” and "Category IT’changed conditions. "Category I” changed conditions occur where subsurface or latent physical conditions at the site differ materially from those indicated in the contract. "Category II”, which is applicable here, involved unknown physical conditions at the site of an unusual nature differing materially from those ordinarily encountered and generally recog-nised as inhering in work of the character provided for in the contract.