This construction contract case is before the court on cross-motions for summary judgment, including review of the granting by the Board of the defendant’s counterclaim for $21,840.00. Plaintiff contracted with defendant to furnish and install a heating, ventilating and air conditioning system in the Government’s V.A. hospital in Bronx, New York. A dispute over interpretation of the contract’s specifications ensued and plaintiff now seeks Wunderlich Act review, 41 U.S.C. §§ 321, 322 (1976), of a decision of the Veterans Administration Contract Appeals Board *731 ("Board”), which denied plaintiffs claim for an equitable adjustment for alleged additional work and sustained the Government’s counterclaim. We conclude the Board’s decision was neither arbitrary, nor capricious, was supported by substantial evidence, and was correct as a matter of law.
HH
Under Contract No. V 101C-256, dated January 9, 1976, AFGO agreed to install a heating, ventilating and air conditioning system in the Veterans Administration Hospital in Bronx, New York. The contract required AFGO to furnish and install six large underground fuel tanks including trench earthwork and rock excavation. During job performance, a disagreement arose concerning whether AFGO was obligated to excavate the holes for the fuel tanks. The contracting officer decided that AFGO was required to perform the work. Plaintiff thereafter performed accordingly and sought additional compensation therefor, which was denied by the contracting officer.
On appeal before the Board, AFGO contended that its obligation to excavate was limited by clause 1-4A[1] to trench earthwork which AFGO defined as a comparatively long and narrow ditch. There was nothing in the specifications or drawings, plaintiff argued, which indicated (a) that it was required to excavate the area for the tanks, or (b) that it was required to seek a clarification. The Board decided plaintiffs interpretation of the contract’s specifications was unreasonable.
Before this court plaintiff contends its interpretation of the contract was reasonable and, therefore, under the rule of contra proferentem, plaintiff was under no duty to seek clarification. Under Wunderlich standards, we uphold the Board’s decision.
There is ample evidence in the record to support the Board’s conclusion. AFGO’s reliance on the rule of contra proferentem is misplaced. That rule is well established and *732 is applicable when the circumstances indicate that the ambiguity was latent and the bidder reasonably overlooked it. James A. Mann, Inc. v. United States, 210 Ct.Cl. 104, 123, 535 F.2d 51, 61 (1976); Yancey Co. v. United States, 222 Ct.Cl. 620 (1980). In this case, however, the disparity of obligations was noted by plaintiff when the bid was being computed (before the contract award), yet AFGO failed to seek clarification as the solicitation system required.
As the court in Beacon Construction Co. v. United States, 161 Ct.Cl. 1, 6-7, 314 F.2d 501, 504 (1963) said:
The bidder who is on notice of an incipient problem but neglects to solve it as he is directed to do by this form of contractual preventive-hygiene, cannot rely on the principle that ambiguities in contracts written by the Government are held against the drafter. . . . Even more, the bidder in such a case is under an affirmative obligation. He "should call attention to an obvious omission in a specification, and make certain that the omission was deliberate, if he intends to take advantage of it.” Ring Construction Corp. v. United States, 142 Ct.Cl. 731, 734, 162 F. Supp. 190, 192, (1958).
See also Space Corp. v. United States, 200 Ct.Cl. 1, 5, 470 F.2d 536, 538-39 (1972).
II.
We next discuss the Government’s counterclaim[2] for a credit based upon an underrun in the quantity of rock removed.
The record is clear that the parties entered into a contract which, through the Payment Clause,[3] provided that the contract price will be adjusted for "overruns” or *733 "underruns” (rock excavation over or under the estimated contract quantity) in accordance with the Differing Site Condition clause.[4] An adjustment under this clause may only be awarded if the overrun or underrun was not reasonably foreseeable. See Wm. A. Smith Contracting Co., Inc. v. United States, 188 Ct.Cl. 1062, 1086, 412 F.2d 1325, 1338 (1969); Clack v. United States, 184 Ct.Cl. 40, 46-47, 395 F.2d 773, 777 (1968). AFGO conceded before the Board that it computed its bid to excavate by using the rock estimate of 270 cubic yards specified in the contract drawings. AFGO excavated 102 cubic yards total, an amount materially less than that estimated in the contract. With less rock to excavate, plaintiff performed far less work under the contract than it had anticipated, therefore, plaintiff would be overpaid if an adjustment were not made. The Board decided "in light of all the circumstances, that an accurate estimate of rock quantity was not feasible and an underrun . . . was not reasonably foreseeable . . . .” We agree with the Board’s decision. By its own statement, AFGO excavated materially less rock than that estimated in the contract, and the rock underrun was not reasonably foreseeable by defendant. Therefore, the equitable adjustment provisions of the Payment Clause were properly triggered and the Government is entitled to an underrun credit from AFGO.
However, the issue of quantum remains. Plaintiff never appealed that determination pursuant to the Disputes Clause and is now time-barred from doing so. See 41 C.F.R. 8-1.318-1(e) (1978). Defendant argues, therefore, that the contracting officer’s decision as to quantum should now be final since plaintiff failed to exhaust its administrative remedies as to that issue. We agree with defendant. AFGO was told of the amount it owed, yet AFGO sat on its rights. It has given us no reason for its failure to appeal the *734 quantum determination. It is, therefore, now time-barred. Troup Bros., Inc. v. United States, 221 Ct.Cl. 850 (1979).
Accordingly, after consideration of the record and submissions of the parties, without oral argument of counsel, plaintiffs motion for summary judgment is denied. Defendant’s motion for summary judgment is granted. Plaintiffs petition is dismissed.[5]

 "Section 1 (Earthwork)
1-4 Scope:
A. trench earthwork includes all trench work required by the drawings and specifications.”

 Defendant’s counterclaim before the Board was confined to the issue of entitlement. Subsequent to the Board’s decision, the contracting officer calculated the quantum to be $21,840, and withheld that amount from payments due AFGO. Plaintiff never appealed that quantum determination to the Board.

 payment: The contract price and time will be adjusted for overruns or underruns at the unit price shown herein in accordance with [the Differing Site Conditions clause]. A. UNIT PRICES: the bidder agrees to the following unit prices for rock excavation over or under the estimated quantity of rock excavation noted on the drawings regardless of its location on the site and the depth of excavation required. Unit prices are net and include resulting change in quantity of earth excavations, as well as all labor, materials, overhead, supervision, insurance, profit and taxes. Trench Rock Excavation; ADD $185.00 per cubic yard overrun. Trench Rock Excavation; DEDUCT $130.00 per cubic yard underrun.

 GENERAL PROVISIONS (SF 23-A, Oct. 1969 Ed.)
4. differing site conditions (a) The Contractor shall promptly, and before such conditions are disturbed, notify the Contracting Officer in writing of: (1) subsurface or latent physical conditions at the site differing materially from those indicated in this contract. . . The Contracting Officer shall promptly investigate the conditions, and if he finds that such conditions do materially so differ and cause an increase or decrease in the Contractor’s cost of, or the time required for, performance of any part of the work under this contract, whether or not changed as a result of such conditions, an equitable adjustment shall be made and the contract modified in writing accordingly.

 With reference to the counterclaim for $21,840, it is our understanding that the money was withheld by the Government and remains rightfully in its possession.